# Richmond

## G. ALLEN RADY V. WILLIAM SYDNEY STAIARS.

March 16, 1933.

Present, All the Justices.

The opinion states the case.

*Williams & Mullen, Guy B. Hazelgrove* and *Ralph T. Catterall,* for the appellant.

*John T. Wingo,* for the appellee.

HOLT, J., delivered the opinion of the court.

We are to determine if devisees under the will of Edward M. Staiars take as joint tenants or as tenants in common.

This will is holographic, was duly probated, and bears date August 7, 1909. The testator died on June 12, 1913, leaving to survive him the following as next of kin and heirs at law: W. Sydney Staiars, a full brother, a devisee; George W. Rady, a half brother, a devisee; Charles C. Rady, a half brother. George W. Rady died on the 18th of May, 1930. The will reads:

"August 7, 1909.

"My dear Will:

"What I have at death now is yours and George my life insurance two pollicies for twenty-five hundred each is payable to mother now to you and George. If one should die before the other then to the one living you or George and it is my wish as Charlie is our mothers son, that you and George should if necessary to contribute to him at times but nothing to be given as it would be taken for his debts. If you or George are in debt or indorsed for any one than to the one not in debt or indorsed for what I have is mine and I will not pay bills or any indorsements as I make none myself or will I endorse for any one not even you or George. All my affairs you will at all times find on my person, at home in the trunk in upper hall and in bank box at Richmond, Virginia, and no debts, always remember this and it might be well to save this.   Your devoted brother.

"EDWARD M. STAIARS.

"August 7th 1909.

"Nothing to Charlies wife or his children, only to Charlie himself for his own personal benefit as our mothers son.

"ED."

This controversy arose out of the fact that George W. Rady who died testate on the 18th day of May, 1930, undertook to dispose of his interest as if he were its owner in absolute estate—that is to say, as if he held it as a tenant in common and not as a joint tenant.

The primary significance of words should ordinarily attach and does attach, unless it is manifest from the will itself that other definitions are intended.  Weight and meaning must be given to every word used if they make any sense at all.   None are to be deleted and none added, for men make their own wills, nor should we search out obscure or recondite possibilities in simple words.   Falstaff's babbling of green fields has sometimes led meticulous critics to untenable conclusions.

█ This will is not the will of a lettered man, but in it he makes his purpose fairly clear. His first sentence undoubtedly gives to William and George a joint estate. *Gardner* v. *Gardner*, 152 Va. 677, 148 S. E. 781. But survivorship is abolished by statute (Code, section 5159), subject, however, to certain statutory exceptions (Code, section 5160), among which is, "when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others."

In the second sentence he said: "If one should die before the other then to the one living you or George and it is my wish as Charlie is our mothers son, that you and George should if necessary contribute to him at times but nothing to be given as it would be taken for his debts."

██ The appellant contends that we should "construe the clause in question to mean that if one dies before the testator the whole property should go to the other." In other words, that he intended to say that "if either of them dies before I do the other is to take."

█ It is true that survivorship is usually construed as fixed by the testator's death rather than by that of the life tenant, unless a contrary intention is made to appear upon the face of the will. *Allison* v. *Allison's Ex'rs*, 101 Va. 537, 44 S. E. 904, 63 L. R. A. 920. But to reach here that conclusion we must strike from the will this unqualified statement, "if one should die before the other," and write in its place, "if either should die before I do." Such deletion and substitution should never be done unless unavoidable. Moreover, the will itself contains internal evidence tending to show that the testator himself intended that it should continue to operate after his death. The beneficiaries are to contribute to the support of their brother. Through it runs an unshaken purpose. The brothers only are to take. The codicil declares that neither Charlie's wife nor his children are to be considered. Fraternal beneficence was his purpose, and that could best be done by the application of the principles of survivorship. Creditors could take nothing

and he was not interested in nieces and nephews. His language is almost a paraphrase of the statute. He said that if one should die before the other "then to the one living." From the statute it is sufficient if it appears to have been intended that "the part of one dying should then belong to the other." In neither instance does it appear that death before that of the testator is necessary.

Appellant's case is in a large measure built around *Armistead's Ex'rs* v. *Hartt,* 97 Va. 316, 33 S. E. 616. There the joint owners were never joint tenants. They took "share and share alike" and so were tenants in common. *Gardner* v. *Gardner, supra.* For that reason and for others stated by the chancellor below in his opinion, it is not controlling; indeed, will cases, except in their statements of general law, are not very valuable. As we have had occasion to observe before, no will has a brother.

These conclusions of Judge Frank T. Sutton, Jr., set out in his opinion made a part of the record, we approve and adopt:

"* * * decided cases are of little value save in those instances where they enunciate rules and principles for guidance in their application to the particular facts of the case under review. No two wills are alike and the present case is no exception. *Armistead's Ex'rs* v. *Hartt,* 97 Va. 316, 33 S. E. 616, 617, is not in point. In that case the only event fixing the passing of the estate was death. Death is certain but its date is uncertain. There was nothing in that will to indicate a period at which death must occur to pass the estate to the parties named in remainder. Judge Riely in speaking for the court said: 'There is no express designation in the will nor is there anything in its language to indicate the period or event to which these words refer, and since they must be given some effect, they must be construed as having reference to that period or event which, under the circumstances, is the most natural.'

"The court, consistent with well recognized rules of construction, held that the language used meant death before

the testator. But in the instant case there is an express designation in the will to indicate the period or event to which these words refer, for the will reads: 'If one should die before the other * * *.'

"This clearly negatives the theory of the defendant that the language meant, if either die before the testator die.

"As said by Justice Holt, speaking for the court in *Wilkerson* v. *Wilkerson*, 151 Va. 322, 144 S. E. 497, 'two things are to be remembered. Every word and provision in a will must be given some meaning when it is possible to do so, * * *.'

"To adopt the construction urged by the defendant, the court would have to reject as meaningless the words 'before the other.'

"In construing a will the judicial expositor must figuratively place himself in the armchair of the testator and with the aid of facts given him, view the situation as the testator probably would. In the instant case it is apparent that after the death of his mother, the testator chose as the object of his bounty his two brothers, Will and George. For his half brother, Charlie, he shows less affection but desires (without making it imperative) that from time to time Charlie be helped by Will and George. He shows a vigorous antipathy to any of his estate being used to pay debts or endorsements. If the objects of his bounty cannot receive it, he does not wish their creditors to get it.

"He negatived any idea for providing for Charlie's wife and children. His language is, 'only to Charlie himself for his own personal benefit.' The dominant purpose of his mind seemed to be provision for his brothers, ignoring all others whether of the same or a lesser degree of kinship.

"In addition it may be said that it is not unknown in the history of wills to find testators clinging to the old feudal idea of preserving estates intact as long as possible with the blood of the first purchaser. It is therefore both reasonable and plausible to think that the testator desired to keep his estate intact in the possession of his brothers and

upon the death of the one to pass to the survivor. Such a construction gives effect to the words of the testator and the courts should always look to the words of the testator to ascertain his intent.

"With the wealth of expression afforded by our language and the simplicity with which thoughts may be expressed, it is hard to conceive that the testator intended by the words used to mean that if either Will or George died before he did. To give effect to such intent would make it necessary for the court to go outside of the will and read into it an expression not used by the testator.

"The cases cited by counsel for the defendant all construed wills containing provision for the passing of an estate at death without fixing its relation to some other event or period. In such cases the court is necessarily called upon to supply by construction the event or period that was meant. Usually the court must say whether the language used meant death before the testator or some other event. With no other expression in the will to guide it the court usually holds such language to refer to death before the testator. Most of the cases cited by plain inference indicate that if the death of the first taker is coupled with other circumstances which may or may not occur, the devise over takes effect according to the ordinary and literal meaning of the words whether before or after the death of the testator.

"That the parties 'Will and George' years ago divided the personal estate between them is only an incident, unexplained by the motive or surrounding circumstances that actuated them, and is insufficient in itself to warrant the court in rejecting as meaningless the words 'if one should die before the other.'

"The court is of the opinion that upon the death of George W. Rady, the property devised passed by survivorship to William Sydney Staiars."

There is no error in the decree appealed from and it is affirmed.

*Affirmed.*